TITLE SERVICES, LLC,
Appellant–Plaintiff,

v.

Martha WOMACKS as Marion County
Auditor, Appellee–Defendant.

No. 49A02–0510–CV–983.

Court of Appeals of Indiana.

June 16, 2006.

Mark R. Galliher, Craig D. Doyle, Joanne B. Friedmeyer, James L. Shoemaker, Doyle & Friedmeyer, Indianapolis, IN, Attorneys for Appellant.

Kelly Whiteman, Office of Corporation Counsel, Indianapolis, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Title Services, LLC appeals the dismissal for lack of subject matter jurisdiction of its action against Martha Womacks as Auditor of Marion County ("the Auditor").

Title Services raises two related issues, which we consolidate and restate as whether Title Services was required to exhaust administrative remedies under Ind.Code ch. 6–1.1–15 before filing suit in Marion Superior Court for the refund of overpaid property taxes.

We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

Title Services is a title insurance agency involved in the business of closing real estate transactions involving single-family homes. On behalf of its Marion County clients, Title Services tendered applications to the Auditor in the fall of 1999 for homestead exemptions and mortgage deductions with the appropriate filing fees. Although the filing fee checks were cashed, the Auditor "failed to process the applications which were either lost, misplaced, or destroyed." (App. at 14.) As a result, Title Services' clients did not receive the homestead exemptions or mortgage deductions to which they were entitled and overpaid their taxes in 2000 and 2001.[2] "Auditor Womacks, although aware in fact for many months of her and her staff's negligence in failing to process these applications ... refused to apply said credits or exemptions and refund overpaid taxes to these homeowners." (Id. at 15.)

On November 4, 2002, Title Services filed a complaint against the Auditor in the Marion superior court for damages due to negligent performance of ministerial duties, requesting relief including proper

1. The facts herein are drawn from Title Services' complaint. *See Doe by Roe v. Madison Center Hospital,* 652 N.E.2d 101, 103 (Ind.Ct. App.1995) ("On appeal from a motion to dismiss pursuant to T.R. 12(B)(1), we accept as true the facts as alleged in the complaint."), *reh'g denied, trans. dismissed.*

2. The applications have been re-filed and the appropriate credits and deductions applied on real estate tax bills in 2002 and after. This appeal relates to credits for 2000 and 2001, which Title Services' clients would presumably have received if the applications filed in 1999 had been processed.

credit for any refunds due. The Auditor filed a motion to dismiss for lack of subject matter jurisdiction under Ind. Trial Rule 12(B)(1), which the trial court granted. After further proceedings,[3] Title Services appealed.

## DISCUSSION AND DECISION

 In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider the complaint, the motion and any affidavits or evidence submitted in support. *GKN Co. v. Magness*, 744 N.E.2d 397, 400 (Ind.2001). The standard of review for T.R. 12(B)(1) motions to dismiss is a function of what occurred in the trial court, that is, whether the trial court resolved disputed facts and, if so, whether the trial court conducted an evidentiary hearing or ruled on a "paper record." *Id.* at 401. If the facts before the trial court are not in dispute, the question of subject matter jurisdiction is one of law, and the reviewing court owes no deference to the trial court's determination. *Id.* If the facts before the trial court are in dispute, the standard of review depends on whether the trial court conducted an evidentiary hearing or ruled on a paper record. *Id.* If the trial court conducted an evidentiary hearing, the reviewing court will reverse only if the trial court's factual findings and judgment are clearly erroneous, applying a two-tiered standard of review. *Id.* If the trial court ruled on a paper record, however, no deference is afforded the trial court's factual findings and conclusions because the reviewing court is "in as good a position as the trial court to determine whether the court has subject matter jurisdiction." *Id.* Because the trial court ruled on the Auditor's motion based on a paper record, our review is *de novo. Id.*

 Subject-matter jurisdiction is the power of a court to hear and decide a particular class of cases. *Doe by Roe v. Madison Center Hospital*, 652 N.E.2d 101, 103 (Ind.Ct.App.1995), *reh'g denied, trans. dismissed.* The issue of subject-matter jurisdiction is resolved by determining whether a claim falls within the general scope of authority conferred on a court by the Indiana Constitution or by statute. *Id.*

Title Services filed its claim in the Marion superior court, which has "concurrent and coextensive jurisdiction with the Marion circuit court in all cases and upon all subject matters, including civil ... cases and matters, whether original or appellate." Ind.Code § 33–33–49–9(1). The Marion circuit court "has original jurisdiction in all civil cases ... except where exclusive jurisdiction is conferred by law upon other courts of the same territorial jurisdiction." Ind.Code § 33–28–1–2(a).

 Characterizing Title Services' complaint as a claim for refund of property tax,[4] the Auditor argues the Tax Court has exclusive jurisdiction over this matter.

---

3. Title Services filed an amended complaint, adding a count related to the enforcement of a purported settlement agreement between the parties. Although the trial court initially declined to accept the amended complaint and later denied a motion for summary judgment, the question whether there was a settlement agreement was eventually resolved against Title Services in a bench trial in August 2005.

4. Title Services asserts its claim sounds only in tort. Although premised on negligent performance by the Auditor, the claim is a challenge to property tax assessment. We have held "the legislature intended all taxpayer challenges to property tax assessments, *regardless of the reason for that challenge*, be decided by the tax court after the taxpayer has appealed to the [local board] and the [tax board]." *Common Council of City of Hammond v. Matonovich*, 691 N.E.2d 1326, 1330 (Ind.Ct.App.1998) (emphasis supplied), *trans. denied* 706 N.E.2d 166 (Ind.1998).

Ind.Code § 33–26–3–1 provides the Tax Court is a court of limited jurisdiction with "exclusive jurisdiction over any case that arises under the tax laws of Indiana and that is an initial appeal of a final determination" made by the Indiana Board of Tax Review ("Tax Board") or the Department of State Revenue. A case arises under the tax laws if "an Indiana tax creates the right of action" or "the case principally involves collection of a tax or defenses to that collection." *State v. Sproles*, 672 N.E.2d 1353, 1357 (Ind.1996). A final determination of the Tax Board for purposes of Tax Court jurisdiction is "an order that determines the rights of, or imposes obligations on, the parties as a consummation of the administrative process." *State Bd. of Tax Comm'rs v. Ispat Inland, Inc.*, 784 N.E.2d 477, 481 (Ind.2003).

The Tax Board has not entered a final determination in this case because Title Services did not avail itself of the administrative remedies under Ind.Code ch. 6–1.1–15 but instead filed suit in superior court. Our Indiana Supreme Court determined in *Sproles*, however, that a taxpayer could not avoid the Indiana Tax Court simply by filing an action in circuit court. 672 N.E.2d at 1360.

■■■ When the legislature has provided a statutory scheme with an exclusive administrative remedy, our courts lack jurisdiction to hear the matter until the administrative procedures have been exhausted or a request for relief has been denied. *Romine v. Gagle*, 782 N.E.2d 369, 379 (Ind.Ct.App.2003) (citing *Sproles*), *trans. denied* 804 N.E.2d 750 (Ind.2003). Exclusivity is typically expressed in either of two forms: the statute states that its provisions constitute the exclusive remedy for such actions, or the statute provides judicial review is available only after the administrative remedies provided in the statute are exhausted. *Id.* The exhaustion rule assumes an available statutory remedy at the time the challenged judicial relief is sought. *Id.*

*Review of Property Tax Assessments*

■■■ Ind.Code ch. 6–1.1–15 describes the procedure for review and appeal of property tax assessment and for correction of certain types of errors. There are two methods by which a taxpayer may appeal his or her property tax assessment. *Musgrave v. State Bd. of Tax Comm'rs*, 658 N.E.2d 135, 140 (Ind.Tax 1995). The first method is the petition for review of assessment, governed by Ind.Code § 6–1.1–15–1 through Ind.Code § 6–1.1–15–4. The second method is the petition for correction of errors. *See* Ind.Code § 6–1.1–15–12.

"A taxpayer may obtain a review by the county property tax assessment board of appeals of a county . . . official's action with respect to the assessment of the taxpayer's tangible property if the official's action requires the giving of notice to the taxpayer." Ind.Code § 6–1.1–15–1(a); *see also* Ind.Code § 6–1.1–4–22 (requiring notice to taxpayer of assessment or reassessment). "A taxpayer may obtain a review by the [Tax Board] of a county property tax assessment board of appeals action with respect to the assessment of that taxpayer's tangible property if the county board's action requires the giving of notice to the taxpayer." Ind.Code § 6–1.1–15–3(a); *see also* Ind.Code § 6–1.1–15–2.1(e) (requiring notice to taxpayer of determination of hearing). The taxpayer may request a rehearing, Ind.Code § 6–1.1–15–5(a), or may petition the Tax Court for "judicial review of the final determination of the [Tax Board] regarding the assessment" of the taxpayer's property. Ind.Code § 6–1.1–15–5(b).

Ind.Code § 6–1.1–15–12 describes the second method of appealing an assessment:

(a) Subject to the limitations contained in subsections (c) and (d), a county auditor shall correct errors which are discovered in the tax duplicate for any one (1) or more of the following reasons:

 (1) The description of the real property was in error.

 (2) The assessment was against the wrong person.

 (3) Taxes on the same property were charged more than one (1) time in the same year.

 (4) There was a mathematical error in computing the taxes or penalties on the taxes.

 (5) There was an error in carrying delinquent taxes forward from one (1) tax duplicate to another.

 (6) The taxes, as a matter of law, were illegal.

 (7) There was a mathematical error in computing an assessment.

 (8) Through an error of omission by any state or county officer the taxpayer was not given credit for an exemption or deduction permitted by law.

Subsections (c) and (d) require additional approval before correction can be made to an assessment under (a)(6), (a)(7) or (a)(8). If the Tax Board made the assessment, the department of local government finance must approve the correction or the Tax Court must order the correction before the auditor may make the correction. Ind. Code § 6–1.1–15–12(c). If the Tax Board did not make the assessment, two of three officials (township assessor, county auditor, county assessor) must approve the correction; if the correction is not approved, the auditor "shall refer" the matter to the county board. Ind.Code § 6–1.1–15–12(d). A taxpayer may appeal a determination of the county board under this section to the Tax Board for a final administrative determination by complying with the procedures in Ind.Code §§ 6–1.1–15–4 to –8.

Petitions for judicial review of the final determination of the Tax Board regarding the assessment of tangible property are governed by Ind.Code § 6–1.1–15–5(b). Petitions for judicial review "shall be taken to the tax court under IC 4–21.5–5 [the Administrative Orders and Procedures Act]." Ind.Code § 6–1.1–15–5(b). "A person may file a petition for judicial review under this chapter only after exhausting all administrative remedies available within the agency whose action is being challenged and within any agency authorized to exercise administrative review." Ind. Code § 4–21.5–4–4(a).

Ind.Code ch. 6–1.1–15 requires exhaustion of administrative remedies before judicial review may be sought in the Tax Court. The legislature has provided a statutory scheme with an exclusive administrative remedy; therefore, the courts lack jurisdiction to hear the matter until those administrative procedures have been exhausted. *Romine*, 782 N.E.2d at 379. *See also Common Council of City of Hammond v. Matonovich*, 691 N.E.2d 1326, 1330 (Ind.Ct.App.1998) ("[T]he legislature intended that all taxpayer challenges to property tax assessments, regardless of the reason for the challenge, be decided by the tax court after the taxpayer has appealed to the County Board of Review and the State Board of Tax Commissioners."), *trans. denied* 706 N.E.2d 166 (Ind.1998).

Plaintiffs are not required, however, to exhaust remedies they do not have. *Sproles*, 672 N.E.2d at 1360. Title Services argues the administrative procedures outlined in Ind.Code ch. 6–1.1–15 are unlikely "to remedy the Auditor's negligent loss of the homeowners' applications." (Br. of Appellant at 12.) Specifically, Title Services asserts there is no "public record" it attempted to timely file for the exemp-

tions and deductions at issue because the Auditor lost the applications. (*Id.* at 11.) Because there is no record of filing, Title Services argues, the local tax review board "may conclude" it lacks the power "to review the Auditor's negligent loss of the homeowner's [sic] applications." (*Id.* at 12.)[5] Thus, Title Services concludes, it had no adequate administrative remedies to exhaust and the trial court erred in dismissing its suit. We are not persuaded the procedures in Ind.Code ch. 6–1.1–15 are inadequate.

"When a property owner files a timely deduction application, but upon receipt of his tax duplicate finds that the deduction has not been properly applied, [the procedure under Ind.Code § 6–1.1–15–12] may be used to correct the error." *Rott Development Co. v. State Bd. of Tax Comm'rs*, 647 N.E.2d 1157, 1160 (Ind.Tax 1995). In *Rott*, the taxpayer's request to correct the tax duplicate was denied when local taxing authorities claimed they lacked the power to review what they characterized as an untimely-filed application. Although the denial was based on a lack of power, the taxpayer's request was reviewed by the Tax Board and appealed to the Tax Court.

Although there is no "public record" Title Services filed the applications,[6] both the county board and the Tax Board must "consider all evidence relevant to the assessment of the real property regardless of whether the evidence was submitted to the township assessor before the assessment of the property." Ind.Code § 6–1.1–15–16. To aid in gathering evidence relevant to the assessment, the county board has been granted investigatory powers. It may subpoena witnesses, examine witnesses under oath on the assessment or valuation of property, compel witnesses to answer questions relevant to the assessment or valuation of property, and order the production of any papers related to the assessment or valuation of property. Ind. Code § 6–1.1–28–9. Evidence the appropriate applications were timely submitted to the Auditor, but lost by the Auditor before being processed, appears relevant to the question of whether the challenged assessments are correct.

Because the legislature has provided an exclusive administrative remedy for challenges to property tax assessments and that administrative remedy is adequate, the trial court properly concluded it lacked subject matter jurisdiction. We affirm.

Affirmed.

FRIEDLANDER, J., and CRONE, J., concur.

---

5. Despite this argument, Title Services is "pursuing petitions for correction of error" under Ind.Code § 6–1.1–15–12, albeit without gaining relief thus far. (Br. of Appellant at 13 n. 3.)

6. We note Title Services attached to its original complaint copies of the cancelled checks used to pay the filing fees.